IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| YVONNE STULL, individually, and on behalf of a class of others similarly situated, | |
| Plaintiff, | Case No. _____ |
| v. | |
| KRAFT FOODS GLOBAL, INC. d/b/a COLUMBIA FOODS COMPANY, | |
| Serve:  CT Corporation System<br>120 S. Central Ave.<br>Clayton, MO 63105 | |
| Defendant. | |

## COMPLAINT

Plaintiff, individually and on behalf of all others similarly situated ("Plaintiff"), by and through her counsel, for her Complaint against Defendant Kraft Foods Global, Inc. d/b/a Columbia Foods Company ("Kraft" or "Defendant"), hereby states and alleges as follows:

1. Kraft is one of the largest manufacturers of food and drink products in the world, and owns over nine brands that each generate revenues exceeding one billion dollars – including the Oscar Mayer brand. *http://kraftfoodscompany.com/assets/pdf/2008_Kraft_Fact_Sheet.pdf*.

2. Kraft operates an Oscar Mayer hot dog processing plant in Columbia, Missouri ("Columbia facility").

3. The Columbia facility employs hundreds of line workers.

4. Plaintiff previously worked as an hourly line worker at Kraft's Columbia facility during the past three years. This lawsuit is brought as a collective action under the FLSA and as

a class action under Missouri state law to recover unpaid wages owed to Plaintiff and all other similarly situated line workers employed at the Columbia facility.

5. The United States Supreme Court recently held that, among other things, preparatory work duties that are integral and indispensable to the principal work activity are compensable under the FLSA. *See IBP, Inc. v. Alvarez*, 126 S. Ct. 514 (2005). *Alvarez* arose in the donning and doffing context in a meat processing plant and its holding is directly applicable to the Columbia facility operated by Kraft.

6. Plaintiff and other similarly situated employees engage in numerous preparatory activities, as well as related work activities performed at the end of the work day, that are integral and indispensable for them to perform their duties. It is Kraft's policy and practice to deny earned wages and overtime pay to its line workers at its Columbia facility. Accordingly, under the holding of *Alvarez*, as well as under consistent rulings and interpretations of the United States Department of Labor, Plaintiff and all other similarly situated employees are entitled to compensation for the time they spend working pre-shift and post-shift. Kraft's deliberate failure to pay its line workers their earned wages and overtime compensation violates the Fair Labor Standards Act ("FLSA") and Missouri state law.

## JURISDICTION AND VENUE

7. The FLSA authorizes court actions by private parties to recover damages for violation of the FLSA's wage and hour provisions. Jurisdiction over Plaintiff's FLSA claims is based upon 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

8. This Court has jurisdiction over Plaintiff's claims for breach of contract, and unjust enrichment pursuant to: (1) 28 U.S.C. § 1332(a) in that Plaintiff is a resident of a different state than the Defendant and the amount in controversy exceeds $75,000; (2) 28 U.S.C.

§ 1332(d) because the Plaintiff is a resident of a different state than the Defendant and, upon information and belief, the amount in controversy exceeds $5 million; and, (3) 28 U.S.C. § 1367 because the state claims are so related to the FLSA claim that they form part of the same case or controversy.

9. Venue in this district is proper pursuant to 28 U.S.C. § 1391(b) and (c), because a substantial part of the events giving rise to the claims occurred in this jurisdiction.

## PARTIES

10. Defendant Kraft is a Delaware corporation, with its principal place of business in Illinois. Defendant can be served through its registered agent CT Corporation System, at 120 South Central Avenue, Clayton, Missouri 63105.

11. Plaintiff, a Missouri resident, is a former line worker at Kraft's Columbia facility. Plaintiff's Consent to Become a Party Plaintiff pursuant to 29 U.S.C. § 216(b) is attached hereto as Exhibit A.

## FACTUAL ALLEGATIONS

12. Kraft operates the Columbia facility where its line workers produce Oscar Mayer brand hot dog products. At the Columbia facility there are six departments; each department is responsible for a different part of the production line. Three departments are responsible for prepping the hot dogs to be cooked and three departments are responsible for packaging the cooked hot dog products.

13. When Plaintiff began working at the Columbia facility she attended a one-day orientation, during which she was told by human resources personnel that the Columbia facility was a non-union facility. Upon information and belief, the Columbia facility is still a non-union facility.

14. Plaintiff and other similarly situated employees are required to perform work for which they are not paid.

15. After arriving at the facility, Plaintiff and other similarly situated employees walk to the career clothing station to pick up their required work uniforms and protective safety equipment, including work pants and frocks, hair nets, earplugs, and gloves.

16. Plaintiff and other similarly situated employees then walk to the locker rooms and don these required work uniforms and protective safety equipment, as well as the steel-toed boots, hard hats and safety glasses kept in their lockers. After that, Plaintiff and other similarly situated employees walk to their designated department on the floor.

17. Plaintiff and other similarly situated employees would clock in at their respective departments. At this point, Kraft begins to pay its line workers.

18. At the end of their shift, Plaintiff and other similarly situated employees clock out of the timekeeping system at their respective departments. At this point, Kraft ceases paying its line workers for the day.

19. Line workers then walk back to the locker room and take off their required work uniforms and protective safety equipment. Before leaving the facility, the items obtained from career clothing station must be placed in bins to be washed and sanitized.

20. Kraft's policy is not to pay Plaintiff and other similarly situated employees for their time spent "donning and doffing." The work duties for which Plaintiff and other similarly situated employees are not paid include, but are not limited to: (1) changing into and out of the required work uniforms and protective safety equipment that can include, among other things (depending on the task): work pants and frocks; safety boots; hair nets; hard hats; gloves or other

hand protection; and (2) walking to and from the changing area, including the career clothing station, and work areas.

21. The work activities for which Plaintiff and other similarly situated employees are not paid are integral and indispensable to their principal job duties and/or are themselves principal duties, and also fall within the "continuous workday."

22. The protective gear that Plaintiff and other similarly situated employees must wear, and for which they are not paid for donning and doffing, is required by Kraft and/or by government regulation. The jobs of Plaintiff and other similarly situated employees are dangerous and involve serious health and safety risks. The circumstances of these jobs, including vital considerations of health and hygiene, require line workers to wear the required work uniforms and protective safety equipment. Plaintiff and other similarly situated employees must don and doff these required uniforms and protective safety equipment on Kraft's premises.

23. These donning, doffing and walking duties that occur during the continuous workday all add up to a significant amount of time every day for which Plaintiff and other similarly situated line workers are not paid.

24. Kraft could easily and accurately record the actual time line workers spend working, including, for example, by placing a time clock at the door of the career clothing station. In fact, Kraft requires line workers to swipe a security badge upon arriving at the facility but this system is not used for payroll.

25. In 2007, Kraft was sued by its line workers at another of its Oscar Mayer hot dog processing plants for failing to pay wages while donning and doffing.

26. Despite being put on notice in 2007 that its policy and practice of not paying its line workers for the time spent donning and doffing violated the Fair Labor Standards Act, Kraft

has not taken steps to ensure that its behavior at the Columbia facility complied with the law. The net effect of Kraft's policy and practice, instituted and approved by company managers, is that Kraft willfully fails to pay overtime compensation and willfully fails to keep accurate time records in order to save payroll costs. Kraft enjoys ill-gained profits at the expense of its hourly employees.

## COLLECTIVE AND CLASS ALLEGATIONS

27. Plaintiff brings Count I, the FLSA claim, as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b) on behalf of all other line workers employed within the last three years. In addition Plaintiff ("Class Representative") brings Counts II and III (breach of contract and unjust enrichment), as a class action pursuant to Federal Rule of Civil Procedure 23, on behalf of herself and as representative of the following class:

> All current and former line workers employed by Defendant who worked at the Columbia facility and were not paid for time spent donning and doffing required articles and walking to and from their work stations during the last five years.

28. The FLSA claims may be pursued by those who opt-in to this case, pursuant to 29 U.S.C. § 216(b). The state law claims, if certified for class-wide treatment, may be pursued by all similarly-situated persons who do not opt-out of the class.

29. Plaintiff, individually and on behalf of other similarly situated employees, seek relief on a collective basis challenging, among other FLSA violations, Defendant's practice of failing to accurately record all hours worked and failing to pay employees for all hours worked, including overtime compensation. The number and identity of other Plaintiffs yet to opt-in and consent to be party Plaintiffs may be determined from the records of Defendant, and potential class members may easily and quickly be notified of the pendency of this action.

SSH-0673-117280
6
Case 2:09-cv-04187-NKL   Document 1   Filed 09/18/09   Page 6 of 12

30. Plaintiff's state law claims satisfy the numerosity, commonality, typicality, adequacy and superiority requirements of a class action.

31. The class satisfies the numerosity standards. The class is believed to number in, at least, the hundreds. As a result, joinder of all class members in a single action is impracticable. Class members may be informed of the pendency of this class action through direct mail.

32. There are questions of fact and law common to the class that predominate over any questions affecting only individual members. The questions of law and fact common to the class arising from Defendant's actions include, without limitation, the following:

   a. Whether line workers are compensated for time spent donning and doffing clothing and protective gear and walking to and from their job posts;

   b. Whether the donning and doffing of certain required uniforms and protective gear constitutes and integral and indispensable activity;

   c. Whether the donning and doffing of certain required uniforms and protective gear begins the continuous workday;

   d. Whether Defendant failed to keep accurate records of the actual time workers spent performing compensable activities;

   e. Whether Defendant's pay policies and practices compensate workers for all of the time they spend working during the continuous workday;

   f. Whether Defendant's compensation policy and practice accounts for all of the time line workers are actually working;

   g. Whether Defendant's compensation policy and practice is illegal; and,

   h. Whether Defendant acted in good faith or willfully violated the FLSA.

33. The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior, with respect to considerations of consistency, economy, efficiency, fairness and equity, to other available methods for the fair and efficient adjudication of the state law claims.

34. The Class Representative's claims are typical of those of the class in that class members have been employed in the same or similar positions as the Class Representative and were subject to the same or similar unlawful practices as the Class Representative.

35. A class action is the appropriate method for the fair and efficient adjudication of this controversy. Defendant has acted or refused to act on grounds generally applicable to the class. The presentation of separate actions by individual class members could create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendant, and/or substantially impair or impede the ability of class members to protect their interests.

36. The Class Representative is an adequate representative of the class because she is a member of the class and her interests do not conflict with the interests of the members of the class they seek to represent. The interests of the members of the class will be fairly and adequately protected by the Class Representative and their undersigned counsel, who have extensive experience prosecuting complex wage and hour, employment and class action lawsuits.

37. Maintenance of this action as a class action is a fair and efficient method for the adjudication of this controversy. It would be impracticable and undesirable for each member of the class who suffered harm to bring a separate action. In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in

inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all class members.

### COUNT I:  Violation of the Fair Labor Standards Act of 1938

**(Brought Against Defendant by the Individually-Named Plaintiff
and on Behalf of All Others Similarly Situated)**

38. Plaintiff reasserts and re-alleges the allegations set forth in the above paragraphs.

39. At all time material herein, Plaintiff has been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. § 201 *et. seq*.

40. The FLSA regulates, among other things, the payment of overtime pay by employers whose employees are engaged in commerce, or engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce.  29 U.S.C. § 207(a)(1).

41. Kraft was, and is, subject to the recordkeeping and overtime pay requirements of the FLSA because it is an enterprise engaged in commerce and its employees are engaged in commerce.

42. Kraft violated the FLSA by failing to pay its workers for all of their time worked, including overtime.  In the course of perpetrating these unlawful practices, Kraft has also willfully failed to keep accurate records of all hours worked by line workers.

43. Section 13 of the FLSA, 29 U.S.C. § 213, exempts certain categories of employees from overtime pay obligations.  None of the FLSA exemptions apply to Plaintiff or other similarly situated employees.  Accordingly, Plaintiff and all other similarly situated employees must be paid overtime pay in accordance with the FLSA.

44. The individually-named Plaintiff and all similarly situated employees are victims of a uniform and facility-wide compensation policy and practice.  This uniform policy and

practice, in violation of the FLSA, has been applied to Plaintiff and all similarly situated employees.

45. Plaintiff and all similarly situated employees are entitled to damages equal to the mandated overtime premium pay within the three years preceding the filing of this Complaint, plus periods of equitable tolling, because Kraft acted willfully and knew, or showed reckless disregard of whether, its conduct was prohibited by the FLSA.

46. Kraft has not acted in good faith nor with reasonable grounds to believe its actions and omissions were not a violation of the FLSA, and as a result thereof, Plaintiff and other similarly situated employees are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid overtime pay described above pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b). Alternatively, should the Court find Kraft did not act willfully in failing to pay overtime wages, Plaintiff and all similarly situated employees are entitled to an award of prejudgment interest at the applicable legal rate.

47. As a result of the aforesaid willful violations of the FLSA's overtime provisions, overtime compensation has been unlawfully withheld by Kraft from Plaintiff and all similarly situated employees for which Kraft is liable pursuant to 29 U.S.C. § 216(b), together with an additional equal amount as liquidated damages, pre-judgment and post-judgment interest, and reasonable attorneys' fees and costs of this action.

WHEREFORE, Plaintiff and all similarly-situated employees demand judgment against Kraft and pray for: (1) compensatory damages; (2) liquidated damages; (3) attorneys' fees and costs as allowed by Section 16(b) of the FLSA; (4) pre-judgment and post-judgment interest as provided by law; and (5) such other relief as the Court deems fair and equitable.

## COUNT II: Breach of Contract

### (Brought Against Defendant by Class Representative on Behalf of Class)

48. Plaintiff reasserts and realleges the allegations set forth in the above paragraphs.

49. At the time the Plaintiff and the Class were employed by Defendant, they were hired to work at a fixed hourly wage rate. Defendant, in turn, agreed to pay the Plaintiff and the Class an expressly stated rate of pay that the employee would earn for each hour worked.

50. For each hour Plaintiff and the Class worked "off-the-clock" in their tenure with Defendant, they did not receive any compensation from Defendant. This violated the parties' employment agreements.

51. Hours that the Plaintiff and the Class worked "off-the-clock" were at the direction and behest of Defendant, not voluntarily performed, but done with the expectation of earning their respective hourly wage.

52. Defendant is liable to the Plaintiff and the Class for the damages incurred as a result of Defendant's failure to pay them for their off-the-clock-work.

WHEREFORE, Plaintiff and all similarly-situated employees demand judgment against Kraft and pray for (1) compensatory damages; (2) pre-judgment and post-judgment interest; (3) fees and costs; and (4) such other relief as the Court deems fair and equitable.

## COUNT III: Unjust Enrichment

### (Brought Against Defendant by Class Representative on Behalf of the Class).

53. Plaintiff reasserts and re-alleges the allegations set forth in the above paragraphs.

54. Plaintiff conferred a benefit upon Defendant by working on its behalf without compensation.

55. Defendant had an appreciation or knowledge of the benefit conferred by Plaintiff.

56. Defendant accepted and retained the benefit under such circumstances as to make it inequitable for Defendant to retain the benefit without payment of its value.

WHEREFORE, Plaintiff and all similarly-situated employees demand judgment against Kraft and pray for (1) compensatory damages; (2) pre-judgment and post-judgment interest; (3) fees and costs; and (4) such other relief as the Court deems fair and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests trial by jury of all issues triable by jury.

Dated: September 17, 2009

Respectfully Submitted,

**STUEVE SIEGEL HANSON LLP**

/s/ George A. Hanson

| | |
|---|---|
| George A. Hanson | MO Bar #43450 |
| hanson@stuevesiegel.com | |
| Virginia Stevens Crimmins | MO Bar #53139 |
| crimmins@stuevesiegel.com | |
| Ashlea Schwarz | MO Bar #60102 |
| ashlea@stuevesiegel.com | |

460 Nichols Road, Suite 200
Kansas City, Missouri 64112
PH: 816-714-7100
FAX: 816-714-7101

**ATTORNEYS FOR PLAINTIFF**