IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| YVONNE STULL, individually, and on behalf of a class of others similarly situated,<br><br>        Plaintiff,<br>v.<br><br>KRAFT FOODS GLOBAL, INC. d/b/a COLUMBIA FOODS COMPANY,<br><br>        Defendant. | Case No. 2:09-CV-04187-NKL |

## MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL OF SETTLEMENT

Dated: October 21, 2010

Respectfully submitted,

**STUEVE SIEGEL HANSON LLP**

*/s/ Virginia Stevens Crimmins*
George A. Hanson  MO Bar # 43450
Email: hanson@stuevesiegel.com
Virginia Stevens Crimmins  MO Bar # 53139
Email: crimmins@stuevesiegel.com
Ashlea G. Schwarz  MO Bar # 60102
Email: ashlea@stuevesiegel.com
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Tel: 816-714-7100
Fax: 816-714-7101

**ATTORNEYS FOR PLAINTIFF**

# TABLE OF CONTENTS

|   |   | Page |
|---|---|---:|
| Facts and Procedural History | | 1 |
| Basic Terms of the Proposed Settlement | | 2 |
| I. | Class Benefits | 2 |
| II. | Class Notice and the Administration Process | 4 |
| III. | Attorneys' Fees and Service Fees | 5 |
| Argument | | 6 |
| I. | Legal Standards for Settlement Approval | 6 |
| II. | The Proposed Settlement Warrants Final Approval | 6 |
| | A. This Settlement is Entitled to a Presumption of Fairness | 6 |
| | B. The Merits of Plaintiffs' Case in Relation to the Terms of the Settlement Support Approval | 7 |
| | C. Defendant's Financial Condition is a Neutral Factor in Determining Whether to Approve the Settlement | 9 |
| | D. The Complexity and Expense of Further Litigation Weigh in Favor of Approving this Settlement | 10 |
| | E. The Amount of Opposition to the Settlement Supports Approval | 11 |
| Conclusion | | 12 |

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Cohn v. Nelson*, 375 F. Supp. 2d 844 (E.D. Mo. 2005) .................................................................. 6

*Grove v. Principal Mut. Life Ins. Co.*, 200 F.R.D. 434 (S.D. Iowa 2001) ...................................... 7

*Holden v. Burlington Northern, Inc.*, 665 F. Supp. 1398 (D. Minn. 1987) .................................... 9

*In re BankAmerica Corp. Sec. Lit.*, 210 F.R.D. 694 (E.D. Mo. 2002) ........................................... 9

*In re Charter Communications, Inc. Sec. Litig.*, MDL No. 1506, 2005 WL 4045741
   (E.D. Mo. June 30, 2005) ............................................................................................................ 7

*In re IBP, Inc. Sec. Litig.*, 328 F. Supp.2d 1056 (D.S.D. 2004) .................................................... 10

*In re Marsh ERISA Litig.*, No. 04 Civ. 8157 (CM), 2010 WL 451028 (S.D.N.Y.
   Jan. 29, 2010) .............................................................................................................................. 9

*In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922 (8th Cir. 2005) .... 6, 7, 9, 10, 11

*Petrovic v. Amoco Oil Co.*, 200 F.3d 1140 (8th Cir. 1999) ...................................................... 7, 11

# MEMORANDUM IN SUPPORT OF
# MOTION FOR FINAL APPROVAL OF SETTLEMENT

On May 5, 2010, the Court granted preliminary approval of the proposed collective and class action settlement in this case. (Doc. 26). The settlement achieves the goals of the litigation by compensating people who worked as production employees at Defendant's hot dog manufacturing facility in Columbia, Missouri for the unpaid time spent pre-shift and post-shift donning and doffing protective gear and walking throughout the plant.

The settlement was negotiated at arms' length, both during a formal mediation and several weeks of continued negotiations thereafter. Class Counsel was familiar with the relevant facts and law and able to assess the strengths and weaknesses of the case, and the relative benefits of settlement over trial and any appeals. Potential class members were mailed a Notice and an opportunity to opt-out of the Settlement. Only five out of 710 potential Class Members elected to opt-out of the settlement, and the claims administrator has reported no opposition to date. The settlement results in a favorable disposition of this case and merits final approval.

## FACTS AND PROCEDURAL HISTORY

Plaintiff, on behalf of herself and other production employees who worked at Kraft's Columbia, Missouri hot dog processing facility, filed this FLSA collective action and Missouri Rule 23 wage and hour class action to recover unpaid wages associated with walking time, as well as donning and doffing certain required articles of clothing and protective gear. *See* Complaint (Doc. 1). The donning and doffing of these articles of clothing and protective gear takes a certain amount of time per day and occurs before and after the Class Members' shifts. *Id.* In response, among many arguments, Defendant primarily asserted that it was fully paying for donning, doffing and walking time and that if it was not paying for all of this time, any amount of donning/doffing time beyond what it was paying was *de minimis*. (Doc. 7).

After an initial period of discovery, the parties agreed to mediate through the Western District of Missouri's Early Assessment Program. In anticipation of mediation, the parties embarked on an extensive investigation and informal exchange of information and class data, including information relating to Defendant's purported payment for donning and doffing. *See* April 26, 2010 Declaration of Virginia Stevens Crimmins, ¶ 8 ("April 26 Crimmins Decl., ¶ __"), attached as Exhibit 1 to Plaintiff's Unopposed Memorandum in Support of Motion for Preliminary Approval (Doc. 25-1). Specifically, Defendant provided documents purporting to show that through September 2007, Class Members were paid 4 minutes per day for the donning and doffing of these articles and protective gear, and that after September 2007, Class Members were paid 6 minutes per day for the donning and doffing of these articles and protective gear. These minutes were paid at a straight time rate only – *not* at an overtime rate. *Id.* at ¶ 9.

Additionally, the parties agreed to participate in and conduct an informal time study at Kraft's Columbia, Missouri plant on February 24 and 25, 2010. During the informal time study, Plaintiff's and Defendant's counsel observed the pre- and post-shift donning and doffing of required clothing and protective gear by the production employees on both the day and night shifts as well as a limited amount of walking time. *Id.* at ¶ 10. Plaintiff's counsel conducted a detailed analysis of this information in order to evaluate and quantify the scope of Plaintiff's claims and the asserted damages, as well as to evaluate the merits of Defendant's defenses. *Id.* at ¶ 9.

On March 16, 2010, the parties and their counsel participated in a formal mediation with Magistrate Judge Knox in Jefferson City, Missouri. Negotiations were robust as both sides, represented by counsel experienced in wage and hour litigation, vigorously advocated for the interests of their respective clients. Although the parties did not reach an agreement that day,

discussions continued and the parties ultimately arrived at an agreement to settle the claims in the Lawsuit. *Id.* at ¶ 12. On May 5, 2010, the terms of this settlement agreement were preliminarily approved by this Court. (Doc. 26).

## BASIC TERMS OF THE PROPOSED SETTLEMENT

## I.     CLASS BENEFITS

Under the settlement, Defendant will provide monetary benefits to a settlement class of production employees who worked for Defendant at any time from September 18, 2004 to March 31, 2010 (the "Class Period"), at Kraft's Columbia, Missouri hot dog manufacturing facility (the "Class" or "Class Members"). *See* Settlement Agreement at ¶¶ 2, 6 (attached as Exhibit A). Defendant will establish a Settlement Fund in the amount of $207,000.00 for the benefit of the class. *See id* at ¶ 2. The Settlement Fund is intended to settle the state and federal wage and hour claims of the Class as well as attorneys' fees, costs, and the Class Representative's service award. *See id.* Each Class Member who does not exclude themselves, including the Class Representative ("Class Member"), shall be allocated a proportionate share of the Settlement Fund after the Settlement Fund has been reduced by (1) court-approved attorneys' fees and costs; (2) a court-approved service award, and (3) a $20.00 minimum payment for each Class Member. ("Remaining Settlement Fund"). The Class Member's proportionate share of the Remaining Settlement Fund will be added to the $20.00 flat payment to determine each Class Member's Settlement Award. *See* Addendum to Settlement Agreement at ¶ 3 (Ex. A).

The distribution of the Remaining Settlement Fund is based upon an equitable formula that takes into account each Class Member's (1) overtime eligible weeks worked in the 3-year FLSA Class Period; (2) non-overtime weeks worked in the entire Class Period; and (3) total compensation earned in the Class Period. *See* Settlement Agreement at ¶ 3. Each Class

Member's payment will be allocated as 50% wages and 50% interest/liquidated damages.[1] *See id.* at ¶ 10(c).

Under the distribution formula, each Class Member is entitled to an average award of approximately $1.12 per week of employment. Because the Class Members averaged 165.12 weeks worked during the class period, the average *per capita* settlement for Class Members (net of fees and costs) is approximately $185.00. For Class Members who were employed during all (or substantially all) of the class period, individual settlement amounts are in the $500 to $600 range. *See* Declaration of Virginia Stevens Crimmins ¶ 3 (attached as Exhibit B).

## II. CLASS NOTICE AND THE ADMINISTRATION PROCESS

Pursuant to the Settlement Agreement, the parties selected a qualified third-party settlement administrator, Rust Consulting, Inc., to update Class Members' addresses, mail notice of the settlement to Class Members, receive exclusion requests, respond to Class Member inquiries, issue settlement checks to Class Members, and conduct other activities relating to class notice and settlement administration under the parties' supervision. *See* Settlement Agreement at ¶¶ 7, 8, 10; *see also* Declaration of Caryn Donly, attached hereto as Exhibit C. In accordance with the Court's order granting preliminary settlement approval, on June 7, 2010, the settlement administrator mailed individual notices to the 709 persons identified by Defendant as Class Members. *See* Donly Decl., at ¶¶ 7-9. The Notice identified the approximate amount that each Class Member would receive if the settlement was approved and they did not exclude themselves. *See* Settlement Agreement at ¶ 8(c).

---

[1] Any unclaimed or uncashed settlement checks will be held open for 365 days. *See* Settlement Agreement at ¶ 10(b). At the end of the 365 days, any unclaimed funds shall revert to Defendant, except for 3% which will be distributed, *cy pres*, to Legal Aid of Western Missouri. *See id.*

Since mailing the Notice, two individuals were identified by Defendant as having been inadvertently omitted from the class list.[2] Donly Decl. at ¶¶ 12, 13. Additionally, one person was identified as having been inadvertently added to the class list.[3] Donly Decl. at ¶ 15. And, five individuals have submitted requests for exclusion. (Doc. 33) Consequently, the Class currently consists of 705 production employees.

## III. ATTORNEYS' FEES AND SERVICE FEES

Pursuant to the Settlement Agreement, Class Counsel separately filed a motion with the Court for approval of attorneys' fees, expenses, and the Class Representative's Service Award. (Doc. 30). To-date there has been no opposition to the fee and service award applications. The fee application requests an award of attorneys fees in the amount of $68,310.00 (or 33% of the Settlement Fund) and $3,000.00 as a service award for the Class Representative who assisted in prosecuting this case by retaining counsel, reviewing and authorizing the filing of the complaint, providing information to counsel, and participating in mediation.

---

[2] The two people who were inadvertently omitted from the class list were mailed notice and provided 45 days (like all other class members) to request exclusion or lodge an objection to the settlement. The 45-day period for one of these individuals, however, closes on November 4, 2010 – one week after the Final Fairness Hearing. Since this person asked to be included in the settlement, and has not excluded herself or filed any objections to-date, the parties agree it would be more efficient to go forward with the Final Fairness Hearing on October 28, 2010 and respectfully ask that the Court take the matter under advisement until after the 45 day opt-out/objection period for this individual closes. Plaintiff will submit a status report to the Court on this individual on November 5, 2010. If this person does not submit an objection, this matter will be ripe for adjudication. If an objection is filed, Plaintiff will propose a briefing schedule in her report.

[3] The parties reviewed relevant employment information and determined that this person was inadvertently identified as a Class Member. *See* Donly Decl. at ¶ 9. A relative of this person contacted Rust and indicated that this person was deceased and that the family had no interest in the Settlement. *Id.* Since this person should not have been included on the class list, and their heirs do not object to their exclusion, this person is not considered a part of the Rule 23 class and he or she will not be releasing any claims they may have against Kraft.

## ARGUMENT

### I. LEGAL STANDARDS FOR SETTLEMENT APPROVAL

A class action may not be settled without court approval. *See* Fed. R. Civ. P. 23(e). In deciding whether to grant approval, a court should make its determination in light of the strong policy in favor of settlement. "The law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *Cohn v. Nelson*, 375 F. Supp. 2d 844, 852 (E.D. Mo. 2005) (citation omitted).

A settlement warrants final approval if it is fair, reasonable, and adequate. *See In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 932 (8th Cir. 2005). A court should consider four factors in deciding whether a settlement meets this standard: "(1) the merits of the plaintiff's case, weighed against the terms of the settlement; (2) the defendant's financial condition; (3) the complexity and expense of further litigation; and (4) the amount of opposition to the settlement." *Id.*

Accordingly, "[t]he district court need not make a detailed investigation consonant with trying the case; it must, however, provide the appellate court with a basis for determining that its decision rests on 'well-reasoned conclusions' and is not 'mere boilerplate.'" *Id.* at 932-33 (citation omitted). "The most important consideration in deciding whether a settlement is fair, reasonable, and adequate is 'the strength of the case for plaintiffs on the merits, balanced against the amount offered in settlement.'" *Id.* at 933 (citation omitted).

### II. THE PROPOSED SETTLEMENT WARRANTS FINAL APPROVAL

#### A. THIS SETTLEMENT IS ENTITLED TO A PRESUMPTION OF FAIRNESS.

As a preliminary matter, a settlement like this one, which was negotiated at arm's length by experienced counsel, is entitled to a presumption of fairness. "[C]ourts . . . have held that

there is a presumption of fairness when a settlement is negotiated at arm's length by well informed counsel." *In re Charter Communications, Inc. Sec. Litig.*, MDL No. 1506, 2005 WL 4045741, *5 (E.D. Mo. June 30, 2005); *see also Grove v. Principal Mut. Life Ins. Co.*, 200 F.R.D. 434, 445 (S.D. Iowa 2001) ("[A] settlement that is the product of arm's-length negotiations conducted by experienced counsel is presumed to be fair and reasonable."). "Although a trial court must consider the terms of a class action settlement to the extent necessary to protect the interests of the class, 'judges should not substitute their own judgment as to optimal settlement terms for the judgment of the litigants and their counsel.'" *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148-49 (8th Cir. 1999) (citation omitted). "[A] class action settlement is a private contract negotiated between the parties. Rule 23(e) requires the court to intrude on that private consensual agreement merely to ensure that the agreement is not the product of fraud or collusion and that, taken as a whole, it is fair adequate, and reasonable to all concerned." *In re Wireless Tel.,* 396 F.3d at 934 (citation omitted).

Here, the negotiations were at arms' length, and resolution was only achieved after formal mediation through an unbiased mediator, Magistrate Judge Knox, followed by several weeks of continued negotiations thereafter. In addition, Class Counsel are very experienced in wage and hour class action litigation. *See* Resume of Stueve Siegel Hanson, attached as Exhibit A to April 26 Crimmins Decl. (Doc. 25-1). Likewise, Defendant was represented by highly competent counsel also experienced in this type of litigation. For these reasons the resulting settlement should be entitled to a presumption of fairness.

### B. THE MERITS OF PLAINTIFF'S CASE IN RELATION TO THE TERMS OF THE SETTLEMENT SUPPORT APPROVAL.

The first and most important factor for the Court to consider is the strength of Plaintiff's case on the merits, balanced against the offered settlement consideration. *In re Wireless Tel.,*

396 F.3d at 933. After significant informal discovery and exchanging views with Defendant's counsel during settlement negotiations, Plaintiff developed a comprehensive assessment of the various facts and legal issues in this case. Although Plaintiff believes that she has a viable case on the merits, in assessing the settlement value of the case, Plaintiff necessarily considered the procedural hurdles, including moving for and receiving conditional and class action certification as well as surviving any decertification motion from Defendant. Further, Plaintiff took into consideration the amount of liability at issue, after learning in the informal discovery process that Defendant did indeed compensate Class Members for a portion of their donning and doffing time.

Under the settlement, Class Members avoid these risks, as well as further delay necessarily associated with complex litigation. Instead, each Class Member, who does not exclude themselves, will receive a proportionate share of the Settlement Fund. The average *per capita* settlement award is just short of $200.00, and compensates Class Members for both state and federal wage and hour claims.

In breaking down the value of this monetary award, the Court should also consider the complexities involved in the damage calculations. Production employees do not work a 40-hour workweek each week. Instead, production employees typically work three 12-hour shifts in a 7-day period and then four 10-hour shifts in a 7-day period. Defendant argued that this equated to Class Members being overtime eligible only every other week. April 26 Crimmins Decl. at ¶ 5. Further, Defendant purportedly compensated Class Members for some of their donning and doffing time. Defendant paid for four minutes per shift of donning and doffing time through September 2007 and paid for six minutes per shift of donning and doffing after September 2007. *Id.* at ¶ 9. Plaintiff did not believe this amount sufficiently compensated Class Members for all

time worked. Not only did Defendant disagree with Plaintiff but Defendant also argued that any additional time spent was *de minimis*, and therefore non-compensable. *Id.* at ¶ 6. This settlement effectively bridges any gap between the amount of uncompensated time Plaintiff alleged Class Members spent donning, doffing, and walking and the amount of time for which they were already being compensated.

This settlement therefore provides real benefits to Class Members. *See Holden v. Burlington Northern, Inc.*, 665 F. Supp. 1398, 1414 (D. Minn. 1987) ("It is not necessary or expected . . . that litigants will obtain through settlement all they might have realized through a victorious trial.") (citation omitted). In the end, the Court "should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere probability of relief in the future, after protracted and expensive litigation. In this respect, 'it has been held proper to take the bird in the hand instead of a prospective flock in the bush.'" *In re BankAmerica Corp. Sec. Litig.*, 210 F.R.D. 694, 701 (E.D. Mo. 2002) (internal quotation omitted).

### C. DEFENDANT'S FINANCIAL CONDITION IS A NEUTRAL FACTOR IN DETERMINING WHETHER TO APPROVE THE SETTLEMENT.

The second factor for the Court to consider is Defendant's financial condition. *See In re Wireless Tel.*, 396 F.3d at 932. Plaintiff does not question Defendant's financial condition or ability to pay more in settlement or at trial. Thus, this factor should play a neutral role in the Court's decision. *See id.* at 933 (affirming settlement approval although there was no indication defendant could not pay more in settlement); *In re Marsh ERISA Litig.*, No. 04 Civ. 8157 (CM), 2010 WL 451028, *7 (S.D.N.Y. Jan. 29, 2010) (where defendant appeared able to withstand greater judgment, this factor played neutral role in fairness evaluation).

### D. THE COMPLEXITY AND EXPENSE OF FURTHER LITIGATION WEIGH IN FAVOR OF APPROVING THIS SETTLEMENT.

The third factor – the complexity and expense of further litigation – also favors compromise. The settlement was reached only after the parties exchanged informal discovery, participated in multiple conferences regarding the Defendant's policies and practices, and after a visit to the Columbia, Missouri facility where an the parties conducted an informal time study. In order to prepare for trial, both parties would have had to hire experts in order to evaluate and assess the donning, doffing, and walking time, which would surely have ended in a battle of the experts at trial. Significant additional formal discovery would have been necessary simply to prepare for conditional and class certification. Likewise, a trial on these issues would have been lengthy and inevitably expensive. Even if Plaintiff was to win at trial, Defendant likely would have appealed, extending litigation even further. Pretrial, trial, and post-trial proceedings could consume years before a final outcome was reached and any recovery could be distributed to Class Members. *See* Crimmins Decl., at ¶ 4.

That the settlement delivers substantially the same benefits now to Class Members that they could expect to win at trial, while avoiding the complexity, delay, cost, and uncertainty of continued litigation, weighs strongly in favor of approval. *See In re Wireless Tel.*, 396 F.3d at 933 ("[T]his case had yet to complete discovery, much less the inevitable appeals that would have been necessary before a final resolution. The district court properly explained that, barring settlement, this case would 'likely drag on for years, require the expenditure of millions of dollars, all the while class members would receive nothing.'"); *In re IBP, Inc. Sec. Litig.*, 328 F. Supp. 2d 1056, 1064 (D.S.D. 2004) (approving settlement and stating "if the Plaintiffs' case survived Defendants' motion [to dismiss], the parties would have engaged in extensive discovery and additional motions, likely including class certification and summary judgment, requiring the

expenditure of significant additional resources by both sides to the litigation as well as the Court. If Plaintiffs were successful on those motions, a lengthy trial would be required."). In this case, the Class Members and the Court have been spared the lengthy and uncertain outcome of a possible trial by the compromise reached in this settlement.

### E. THE AMOUNT OF OPPOSITION TO THE SETTLEMENT SUPPORTS APPROVAL.

The final factor the Court should consider is the reaction of the Class to the settlement. *See In re Wireless Tel.*, 396 F.3d at 932. To date, the reaction of the Class has been highly encouraging. The claims administrator has reported only five exclusions, which equates to .007% of the Class. Donly Dec. at ¶ 14. The names and addresses of these individuals were provided to the Court on October 18, 2010. (Doc. 33).

At this time there have been no objections to the settlement and, in fact, Rust reports that several individuals have come forward to find out if they could participate in this settlement. Donly Decl. at ¶ ¶13,16. The lack of opposition to the settlement supports a finding that the settlement is fair, reasonable, and adequate. *See In re Wireless Tel.*, 396 F.3d at 933 ("[T]he amount of opposition to the settlement is minuscule. The district court concluded that only .00068% of the class objected to the settlement and only .0024% of the class opted out."); *Petrovic*, 200 F.3d at 1152 ("Finally, fewer than 4 percent of the class members objected to the settlement, significantly fewer than the number of objectors to other settlements that have been approved."). Because the response to the settlement has been overwhelmingly positive, and opposition currently non-existent, this factor also supports final approval of the settlement.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant their Motion for Final Approval of this Class Action Settlement, and any other relief the Court deems just and proper.

Dated:   October 21, 2010

Respectfully submitted,

**STUEVE SIEGEL HANSON LLP**

*/s/ Virginia Stevens Crimmins*
George A. Hanson  MO Bar # 43450
Email: hanson@stuevesiegel.com
Virginia Stevens Crimmins  MO Bar # 53139
Email:  crimmins@stuevesiegel.com
Ashlea G. Schwarz  MO Bar # 60102
Email:  ashlea@stuevesiegel.com
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Tel:  816-714-7100
Fax:  816-714-7101

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies on the 21st day of October, 2010, the above was served via the Court's ECF filing system to all counsel of record.

*/s/ Virginia Stevens Crimmins*
Attorney for Plaintiff

SSH-0673/176784
12
Case 2:09-cv-04187-NKL   Document 35   Filed 10/21/10   Page 15 of 15